DCP:MSM
F. #2019R01515

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

APOSTOLOS PITSIRONIS,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

COMPLAINT AND AFFIDAVIT IN SUPPORT OF APPLICATION FOR AN ARREST WARRANT

(18 U.S.C. § 1343)

21 MJ 162

EASTERN DISTRICT OF NEW YORK, SS:

      RACHEL CARTWRIGHT, being duly sworn, deposes and states that she is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

      On or about and between May 2, 2019 and June 17, 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant APOSTOLOS PITSIRONIS, together with others, did knowingly and intentionally devise a scheme and artifice to defraud, and to obtain money and property from two individuals whose identities are known to the undersigned ("Victim-1" and "Victim-2"), by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, including wire transfers.

      (Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

The source of your deponent's information and the grounds for her belief are as follows:[1]

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been a Special Agent with the FBI for approximately five and a half years. As an FBI Special Agent, I have participated in investigations of complex financial frauds including, among other things, wire fraud. I have conducted and participated in, among other things, surveillance, the execution of search warrants, debriefings of informants and interviews of witnesses.

2. I have personally participated in the investigation of the offense discussed below. I am familiar with the facts and circumstances of this investigation from: (a) my personal participation in this investigation; (b) reports made to me by other law enforcement authorities; (c) interviews with witnesses and victims; and (d) my review of evidence, including emails, bank records and telephone records.

I. The Defendant and Relevant Entities

3. Financial Services Firm[2] was a business that, among other things, employed financial advisors to manage the investments of its clients. Financial Services Firm had offices in, among other places, Melville, New York. Financial Services Firm's computer servers are located in Pennsylvania.

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

[2] The identities of all anonymized individuals and entities herein are known to me.

4. The defendant APOSTOLOS PITSIRONIS was a registered investment advisor and broker employed by Financial Services Firm, and worked in its office in Melville, New York.

5. Victim-1 and Victim-2 (collectively, the "Victims") were a married couple whose assets were managed by the defendant APOSTOLOS PITSIRONIS for approximately ten years, including while PITSIRONIS worked at Financial Services Firm.

6. Financial Institution-1 and Financial Institution-2 are federally chartered banks, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC"). Financial Institution-1 and Financial Institution-2 conducted business in several states, including New York.

II. The Criminal Scheme

7. The defendant APOSTOLOS PITSIRONIS began managing investments for the Victims in or about 2009 while employed at a different financial services firm. In or about December 2018, after PITSIRONIS began working at Financial Services Firm, the Victims moved their investments to Financial Services Firm so that PITSIRONIS could continue managing them.

8. In or about approximately December 2018, the defendant APOSTOLOS PITSIRONIS contacted the Victims and asked for a $200,000 personal loan. The Victims declined to provide PITSIRONIS a personal loan.

9. On or about and between May 2, 2019 and June 11, 2019, approximately $411,000 in cash was transferred via 22 separate bank-to-bank wire transfers from one of the Victims' accounts at Financial Services Firm to an account ending in 4024 at Financial Institution-1 in the name of the defendant APOSTOLOS PITSIRONIS and his wife

(the "Initial Pitsironis Account"). Neither Victim-1 nor Victim-2 authorized any of the 22 transfers.

10. Records from Financial Services Firm indicate that each of those 22 transfers was initiated by the defendant APOSTOLOS PITSIRONIS, from Financial Services Firm's office in Melville, New York, through Financial Services Firm's computer system, the servers of which are located in Pennsylvania. The records also show that prior to initiating the 22 transfers, PITSIRONIS falsely represented to Financial Services Firm that: (i) he had spoken with Victim-2 via telephone and received verbal authorization from Victim-2 to allow transfers to the Initial Pitsironis Account from the Victims' account at Financial Services Firm; and (ii) the Initial Pitsironis Account was owned by Victim-2.

11. Records from Financial Institution-1 and Financial Institution-2 show that on or about and between May 1, 2019 and June 17, 2019, more than $400,000 was transferred from the Initial Pitsironis Account to two other bank accounts in the defendant APOSTOLOS PITSIRONIS's name, one at Financial Institution-1 (the "Second Pitsironis Account") and one at Financial Institution-2 (the "Third Pitsironis Account").

12. Records from Financial Insitution-1 and Financial Institution-2 show that on or about and between May 1, 2019 and June 17, 2019, the Initial Pitsironis Account and the Third Pitsironis Account reflected a series of debits, including in the following approximate amounts: (i) $40,502 to the company that operates Casino-1, in Atlantic City, New Jersey; (ii) $15,000 to the company that operates Casino-2, located in Atlantic City, New Jersey; (iii) $2,000 to Casino-3, located in south Florida; (iv) $18,600 in cash withdrawals, including a $4,900 withdrawal at an ATM at Casino-1; (v) $38,800 to pay a

credit card bill; (vi) $2,054.84 to the financial services department of an automobile company; and (vii) $1,727.13 to a landscaping company.

13. The funds in the Second Pitsironis Account, including the funds transferred to that account from the Initial Pitsironis Account, were frozen by Financial Institution-1 on or about June 17 2019.

III. Conclusion

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued so that the defendant APOSTOLOS PITSIRONIS can be dealt with according to law.

Because public filing of this document could result in a risk of flight by PITSIRONIS, who has not yet been apprehended, as well as jeopardize the government's investigation, your deponent respectfully requests that the complaint and arrest warrant be filed under seal.

_____
RACHEL CARTWRIGHT
Special Agent, Federal Bureau of Investigation

Sworn to before me via telephone this
9th day of February, 2021

_Lois Bloom_
THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK